**13 CV 7295**



Lawrence P. Eagel (LE4505)
Justin A. Kuehn (JK5853)
BRAGAR EAGEL & SQUIRE, P.C.
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff, the Class and the WA Sub-Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SADAF SHIRVANI *a/k/a* KRISTY SHIRVANI, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>XEROX EDUCATION SERVICES, LLC, *f/k/a* ACS EDUCATION SERVICES, INC. and U.S. BANK, N.A.,<br><br>　　　　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sadaf Shirvani *a/k/a* Kristy Shirvani ("Ms. Shirvani" or "Plaintiff"), by her undersigned counsel, on behalf of herself and all others similarly situated, complaining of defendants Xerox Education Services, LLC, *f/k/a* ACS Education Services, Inc. ("ACS") and U.S. Bank, N.A. ("U.S. Bank") (ACS and U.S. Bank are referred to collectively, as "Defendants"), alleges upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action against defendants ACS and U.S. Bank for breach of contract, violations of the New York General Business Law ("GBL") § 349, and violations of the Washington Consumer Protection Act, RCW Ch. 19.86 ("WCPA").

2. Defendants' common scheme takes a variety of forms, but all of Defendants' techniques have the same goal – to credit payments to student loans improperly to extract more interest from borrowers.

3. Defendants' scheme includes:

    (a) applying payments received in excess of the stated monthly amount due ("Prepayments"), not to reduce principal, but to keep borrowers in debt; and

    (b) ignoring borrowers' express instructions as to how Prepayments should be applied to loans.

4. The end result is Defendants' scheme kept borrowers trapped in student loan debt that borrowers were actively seeking to repay as fast as possible to lower the total cost of borrowing.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.

7.      In addition, this case is related to the matter *Breitman v. Xerox Education Services, LLC, s/h/i Affiliated Computer Services, Inc., et al.*; Case No. 12-cv-6583 (PAC) ("Breitman Matter"), which has been pending before this Court since August 2012. The misconduct alleged concerning the Breitman Matter's *CheckMate II Class* is identical to the misconduct alleged herein. The primary defendants in this matter – ACS and U.S. Bank – are the same as in the Breitman Matter.[1] Furthermore, Plaintiff has retained the same counsel as plaintiff in the Breitman Matter.

## PARTIES

8.      Plaintiff Kristy Shirvani is an individual residing in the State of Washington. Ms. Shirvani has three student loans originated by U.S. Bank between 2006 and 2009 (collectively referred to as the "Student Loans", individually referred to as "Loan 1", "Loan 2", and "Loan 3"). The Student Loans are all graduate plus loans under the Federal Family Education Loan Program ("FFELP"),[2] which is part of the Higher Education Act of 1965.

9.      Defendant ACS is a Delaware limited liability company with its principal executive offices located at 2277 E 220th Street, Long Beach, California. ACS is, and was at all relevant times, the servicer of the Student Loans acting as an agent of the Student Loans' owner U.S. Bank. ACS is registered to do business in the State of New York. In addition, the ACS office responsible for servicing the Student Loans and corresponding with Plaintiff is located in New York State. Prior to changing its name to Xerox Education Services, LLC, ACS was known as Xerox Education Services, Inc. Xerox Education Services, Inc. was previously known

---

[1]     The Breitman Matter also names NextStudent, Inc. ("NextStudent") as a defendant. However, NextStudent has not appeared in the Breitman action, and appears to have ceased to do business.
[2]     Under FFELP, private lenders made loans to students guaranteed by state or private non-profit guarantee agencies and reinsured by the U.S. Department of Education.

as ACS Education Services, Inc. ACS Education Services, Inc. was previously known as AFSA Data Corporation. At all relevant times ACS has done business under the name "ACS".

10. Defendant U.S. Bank is a national banking association with its principal executive offices located at 425 Walnut Street, Cincinnati, Ohio. U.S. Bank is the current owner and maker of the Student Loans. U.S. Bank has an office located at 100 Wall Street, New York, New York, and transacts business in the State of New York.

## BACKGROUND

11. The Student Loans are fixed interest rate loans with "level" stated payments and terms of 25 years. The original total balance of the Student Loans was over $87,200.00. Each of the Student Loans has a stated annual interest rate of 8.50%, which was reduced to 8.0% after Plaintiff enrolled in *CheckMate II* (defined below) and received another .25% rate reduction in addition to the Auto Debit Benefit (defined below). According to ACS's current website, www.acs-education.com, "[t]he Level Repayment Plan is designed to allow the borrower to make payments of equal amounts throughout the payment period. <u>This plan provides the least amount of interest accrual</u> over the life of the loan." (emphasis added)

12. ACS promised borrowers a .25% rate reduction for using "Automatic Debit" to make monthly payments ("Auto Debit Benefit").[3]

### The Auto Debit Benefit - *CheckMate II*

13. To receive the Auto Debit Benefit (.25% interest rate reduction), Plaintiff enrolled in a program offered by ACS known as "*CheckMate II*".

14. Under *CheckMate II*, the borrower's loan payment was supposed to be deducted automatically from his/her bank account and applied to the loan each month as of the assigned due date.

---

[3] The Auto Debit Benefit terminates if a borrower ceases to make payments using "Automatic Debit".

4

15. According to the pre-printed application form provided to Plaintiff (and other *CheckMate II* applicants) to enroll in *CheckMate II*, ACS agreed and Plaintiff confirmed that "each automatic withdrawal **will** occur **on the account's (student loan) regular scheduled due date**." (emphasis added)

16. In the pre-printed form describing the terms and conditions for *CheckMate II*, ACS represented that "Your regular monthly payment **will** be deducted from your bank account and applied as of **the assigned due date each month**." (emphasis added)

17. In the same pre-printed form, ACS encouraged borrowers to join *CheckMate II*, stating that *CheckMate II* "is the most convenient way [for borrowers] to make [their] student loan account payment. You will save time and money, as well as eliminate the hassle of writing checks."

18. Once enrolled in *CheckMate II*, borrowers did not receive monthly statements. Rather, as set forth above, monthly payments were to be deducted from the borrower's checking accounts each month on the assigned due date.

19. At least as early as April 2012, ACS published the then-current *CheckMate II* terms and conditions on its website, www.acs-education.com (log-in required). Consistent with the terms and conditions discussed in paragraphs 13-18, ACS now states as follows:

> You authorize your financial institution to deduct the ACS loan payment(s) for the selected loan(s) automatically from your designated bank account **each month**. This recurring debit **will** be made on your **pre-established due date**. Please note that prepayments, defined as additional payments received on your loan(s) greater than the regular installment or the amount due, will not satisfy future installments or prevent the next month's debit. (emphasis added)

20. In sum, since the time Plaintiff enrolled in *CheckMate II* in 2010, the terms and conditions of *CheckMate II* were as follows:

5

    i.    ACS was (supposed) to deduct the borrower's monthly loan payment from the borrower's checking account automatically each month on the assigned payment date;

    ii.    ACS would not provide monthly statements for those enrolled in *CheckMate II*; and

    iii.    Prepayments made by the borrowers (i.e. payments other than the regular installment or amount due) were not supposed to satisfy future installments or prevent the next month's debit.

21.    Plaintiff enrolled in *CheckMate II* in or around November 2010.

22.    Plaintiff's assigned payment due date on her *CheckMate II* plan for the Student Loans was, at all relevant times, the 28th of each month.

23.    In February 2011, because, at the time, she was employed in a temporary position, Plaintiff enrolled in Income Based Repayment ("IBR"). In December 2011, after obtaining employment in a permanent position, Plaintiff requested to be removed from IBR, but this request took four months to process.

24.    After finally ending IBR, Plaintiff resumed, in May 2012, regular "level" monthly scheduled payments on the Student Loans, as follows: Loan 1 - $211.12, Loan 2 - $239.63, and Loan 3 - $175.27.[4] After a *CheckMate II* auto-debit was made, Plaintiff would receive an email confirming that the deduction was processed.

---

[4] Plaintiff paid off Loan 3 with one lump sum on or around January 15, 2013. Plaintiff was forced to pay off this loan in one payment, rather than through Prepayments over time, because of Defendants' misapplications of her prior Prepayments. Had Plaintiff been able to make Prepayment to pay the loan down over time her total repayment cost would have been less.

25. From time to time, Plaintiff made Prepayments in order to reduce the principal balance of the Student Loans and, therefore, repay the Student Loans in less time and reduce her overall interest charge.

26. Contrary to the terms and conditions of *CheckMate II*, Prepayments were applied by ACS, in whole or in part, to satisfy <u>future</u> installments, and <u>did</u> prevent the next month's debit, but often <u>did not</u> reduce principal. Specifically, the following chart summarizes the misapplication of Plaintiff's Prepayments:[5]

| Date of Prepayment | Loan Prepayment made toward | Amount of Prepayment | Misapplication |
|---|---|---|---|
| January 20, 2012 | 3 | $9,036.74 | Jan. 2012, Loan 3 portion of *CheckMate II* payment skipped.<br><br>$1,956.17 of Prepayment applied to interest. |
| June 4, 2012 | 3 | $4,722.00 | June 2012, Loan 3 portion of *CheckMate II* payment skipped.<br><br>July 2012, Loan 3 portion *CheckMate II* payment applied entirely to interest. |
| Aug. 3, 2012 | 3 | $3,224.40 | Aug. 2012, Loan 3 portion of *CheckMate II* payment skipped.<br><br>Sept. 2012, Loan 3 portion *CheckMate II* payment applied entirely to interest. |

---

[5] A *CheckMate II* payment is "skipped" when a borrower's regular monthly *CheckMate II* auto-debit is not "deducte[d] from [his/her] bank account and applied as of the assigned due date each month."

| July 26, 2013 | 2 | $2,222.00 | July 2013, Loan 2 portion of *CheckMate II* payment skipped. |

27.     As shown above, Plaintiff's Prepayments, contrary to *CheckMate II*'s representations, were often misapplied by ACS, in whole or in part, to satisfy future monthly installments or to prevent the following months' debits.

28.     Were Prepayments applied according to *CheckMate II*'s terms and conditions, they would not have caused *CheckMate II* payments to be skipped. Defendants' scheme resulted in Plaintiff and the other class members paying greater interest than if the Prepayments had been properly and immediately applied to principal.

29.     The above-listed misapplications occurred despite that on January 20, 2012, Plaintiff made the first listed Prepayment while on the phone with an ACS "domestic supervisor". On this call, Plaintiff instructed that anytime she makes a Prepayment it be applied directly and completely to the principal of the specified loan without satisfying future installments or preventing *CheckMate II* auto-debits. The ACS domestic supervisor confirmed that he "manually" changed Plaintiff's account so that any time Plaintiff made a Prepayment it would be applied as she requested. Plaintiff then made an over $9,000.00 Prepayment with the ACS domestic supervisor on the phone. After Plaintiff made this Prepayment, the ACS domestic supervisor confirmed that the entire Prepayment was applied to principal. As shown above, despite Plaintiff's efforts, her payment instructions were ignored.

30.     On the January 20, 2012 call, the ACS domestic supervisor also told Plaintiff that *CheckMate II* automatically applies Prepayment to future installments unless someone at ACS "manually" makes a change to a borrower's account. This fact is not contained in the

*CheckMate II* enrollment form, and Plaintiff was not aware of this until the January 20, 2012 call. This fact is also contradicted by a representation on ACS's website, www.acs-education.com, in a section titled "Repayment Plan Options", which states "ACS offers a variety of repayment plans designed to meet your budget <u>while minimizing the interest costs over the life of your loan</u>."

31. Throughout 2012, Plaintiff spoke with multiple ACS customer service representatives who gave conflicting information, and were ultimately unable to resolve her *CheckMate II* problems. The failures of ACS's customer service caused Plaintiff to contact the financial aid officer from the school she attended when the Student Loans were originated. Plaintiff's school's financial aid officer put Plaintiff in contact with her contact at ACS who was able to put Plaintiff in touch with ACS's management support team.

32. On or around January 16, 2013, Plaintiff received a call from Nancy Young, a member of ACS's management support team. Ms. Young told Plaintiff that the only way to prevent a Prepayment from causing *CheckMate II* auto-debits to be skipped is to make the Prepayment on the 28th of each month (same day that Plaintiff's monthly auto-debit is scheduled for). If the 28th falls on a weekend or holiday, Ms. Young instructed Plaintiff to make the Prepayment on the Friday before the 28th. None of the instructions or information provided to Plaintiff by Ms. Young are disclosed in the *CheckMate II* enrollment forms.

33. Plaintiff followed Ms. Young's instructions and, as shown above, her July 2013 *CheckMate II* auto-debit was skipped.[6] In response, Plaintiff reached out to Ms. Young, and Ms. Young informed Plaintiff via email that:

> Unfortunately, **when a customer is making additional payments along with the Checkmate II drafts we cannot guarantee that the draft will be implemented**, as it is a very time sensitive process. (emphasis added)

---

[6] The July 2013 Prepayment was made on July 26, 2013, because July 28, 2013 was a Sunday.

34. The above-quoted explanation from ACS about misapplication of Prepayments makes clear the *CheckMate II* terms and conditions contain misrepresentations, ACS is aware of the problems with the *CheckMate II* system regarding the application of Prepayments, that borrowers' instructions as to how Prepayments should be applied to their loans are systematically ignored, and no procedure exists for a borrower to make a Prepayment and not have *CheckMate II* auto-debits skipped.

35. Further, that ACS "cannot guarantee" that Prepayments will not cause *CheckMate II* auto-debits to be skipped after Prepayments no matter what a borrower does is not disclosed in the *CheckMate II* enrollment forms.

36. In addition, Plaintiff never received a letter, or any other communication, from Defendants informing her that she was in a "pre-paid condition", that her due date was advanced, or that any *CheckMate II* payments would be skipped or applied entirely to interest after a Prepayment.

37. Defendants' deception was difficult, if not impossible, to uncover because www.acs-education.com does not allow borrowers to access a payment history showing the value of the principal of their loans after each payment was applied.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings the First and Second Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all borrowers of student loans owned or serviced by Defendants who enrolled in *CheckMate II*, or a similar auto-debit payment program, and made Prepayments to their loans owned or serviced by Defendants and had those Prepayments applied to satisfy future

installments or prevent the next month's auto-debit. This class period extends from the present back to the earliest period for which the statutes of limitations allow (the "Class").

39. Plaintiff brings the Third Claim for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all Washington State residents who are borrowers of student loans owned or serviced by Defendants who enrolled in *CheckMate II*, or a similar auto-debit payment program, and made Prepayments to their loans owned or serviced by Defendants and had those Prepayments applied to satisfy future installments or prevent the next month's auto-debit. This class period extends from the present back to the earliest period for which the statutes of limitations allow (the "WA Sub-Class").

40. The members of the Class and WA Sub-Class are so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and WA Sub-Class is unknown to Plaintiff at this time and can only by ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the Class and WA Sub-Class.

41. Common questions of law and fact exist to all members of the Class and WA Sub-Class, and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the and WA Sub-Class are:

(a) whether Defendants breached their contract with Plaintiff and the other members of the Class;

(b) whether Defendants' conduct violated the GBL;

(c) whether Defendants' conduct violated the WCPA (WA Sub-Class only); and

(d)     whether the Court should enjoin Defendants from continuing to engage in the conduct complained of herein.

42.    Plaintiff's claims are typical of the claims of the members of the Class and WA Sub-Class, as Plaintiff and the other members of the Class and WA Sub-Class sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and WA Sub-Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class or WA Sub-Class.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class and WA Sub-Class is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the Class and WA Sub-Class to seek redress individually for the wrong done to them. There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract on behalf of Plaintiff and the Class against all Defendants)

45.    Plaintiff repeats and realleges ¶¶ 1 through 44 as if fully set forth herein.

46.    Defendants' contract with Plaintiff and the other Members of the Class provides, in relevant part:

> (a)    monthly *CheckMate II* auto-debits, "will be deducte[d] from [a borrower's] bank account and applied as of the assigned due dated each month"; and

(b) Prepayments made by borrowers (i.e payments other than the regular installment or amount due) will not to satisfy future installments or prevent the next month's debit

47. Defendants breached their contract by, as alleged above, misapplying Prepayments, skipping *CheckMate II* payments after Prepayments, applying Prepayments to satisfy future installments or to prevent the next month's auto-debit, and ignoring borrowers' instructions as to application of Prepayments.

48. As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf of Plaintiff and the Class against all Defendants)

49. Plaintiff repeats and realleges ¶¶ 1 through 48 as if fully set forth herein.

50. Plaintiff and the other Members of the Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

51. Defendants engaged in acts and practices in the state of New York that were deceptive or misleading in a material way, and that injured Plaintiff and the other Members of the Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

52. Defendants' deceptive acts include: (i) representing to borrowers that monthly *CheckMate II* auto-debits, "will be deducte[d] from [a borrower's] bank account and applied as

of the assigned due dated each month", (ii) representing to borrowers that Prepayments will not satisfy installments or prevent the next month's debit, (iii) failing to disclose that ACS "cannot guarantee" that Prepayments will not cause *CheckMate II* auto-debits to be skipped after Prepayments regardless of what a borrower does, and (iv) failing to disclose that a Prepayment must be made on the same day as *CheckMate II* auto-debit for it to even be possible, but not guaranteed, that *CheckMate II* auto-debit will not be skipped; when in fact Defendants' system applies Prepayments to thwart prepayment, extract interest from student loan borrowers, and is incapable of insuring that borrowers payment instructions are adhered to.

53. Plaintiff and the other Members of the Class have been damaged by Defendants' violations of section 349 of the GBL, for which they seek recovery of the actual damages they suffered because of Defendants' willful and wrongful violations of section 349, in an amount to be determined at trial.

54. Plaintiff and the other Members of the Class also seek to enjoin Defendants' practices that violate section 349 of the GBL.

55. Plaintiff and the other Members of the Class seek treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

### THIRD CLAIM FOR RELIEF

#### (Violation of the WCPA on behalf of Plaintiff and the WA Sub-Class against all Defendants)

56. Plaintiff repeats and realleges ¶¶ 1 through 55 as if fully set forth herein.

57. Plaintiff and the WA Sub-Class are persons with the meaning and coverage of the WCPA.

58. The WCPA provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

RCW 19.86.020

59.     Defendants engaged in unfair and deceptive acts and practices in violation of the WCPA that injured Plaintiff and the WA Sub-Class. Such acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

60.     Defendants' unfair and deceptive acts include (i) representing to borrowers that monthly *CheckMate II* auto-debits, "will be deducte[d] from [a borrower's] bank account and applied as of the assigned due dated each month", (ii) representing to borrowers that Prepayments will not satisfy installments or prevent the next month's debit, (iii) failing to disclose that ACS "cannot guarantee" that Prepayments will not cause *CheckMate II* auto-debits to be skipped after Prepayments regardless of what a borrower does, and (iv) failing to disclose that a Prepayment must be made on the same day as *CheckMate II* auto-debit for it to even be possible, but not guaranteed, that *CheckMate II* auto-debit will not be skipped; when in fact Defendants' system applies Prepayments to thwart prepayment, extract interest from student loan borrowers, and is incapable of insuring that borrowers payment instructions are adhered to.

61.     Plaintiff and the WA Sub-Class have been damaged by Defendants' violations the WCPA, for which they seek recovery of the actual damages they suffered because of Defendants' willful and wrongful violations of chapter 19.86, in an amount to be determined at trial.

62.     Plaintiff and the WA Sub-Class also seek to enjoin Defendants' practices that violate the WCPA.

63.     Plaintiff and the other Members of the WA Sub-Class seek treble damages and an award of reasonable attorney's fees.

15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the Classes prays for judgment as follows:

(a) certifying the proposed Class and WA Sub-Class pursuant to Fed. R. Civ. P. 23;

(b) designating Plaintiff as representative of the proposed Class and WA Sub-Class, and designation of Plaintiff's counsel as Class counsel;

(c) awarding Plaintiff and the other members of the Class and WA Sub-Class damages for the wrongful acts alleged;

(d) awarding Plaintiff and the other members of the Class treble damages for Defendants' violations of the GBL;

(e) awarding Plaintiff and the other members of the WA Sub-Class treble damages for Defendants' violations of the WCPA

(f) enjoining Defendants from continuing the wrongful acts and practices alleged;

(g) awarding Plaintiff and the other members of the Class and WA Sub-Class the costs of the suit and attorneys' fees;

(h) awarding Plaintiff and the other members of the Class and WA Sub-Class pre and post judgment interest at the maximum legal rate; and

(i) awarding Plaintiff and the other members of the Class and WA Sub-Class such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: October 15, 2013

                                              BRAGAR EAGEL & SQUIRE, P.C.

By: _/s/ Lawrence P. Eagel_
     Lawrence P. Eagel (LE4505)
     Justin A. Kuehn (JK5853)
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff, the Class
and the WA Sub-Class*

17