UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SADAF SHIRVANI *a/k/a* KRISTY SHIRVANI, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>XEROX EDUCATION SERVICES, LLC, *f/k/a* ACS EDUCATION SERVICES, INC. and U.S. BANK, N.A.,<br><br>      Defendants. | Case No. 13-cv-7295 (LAK) (AJP) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER OR, ALTERNATIVELY, DISMISS**

Lawrence P. Eagel (LE4505)
Justin A. Kuehn (JK5853)
BRAGAR EAGEL & SQUIRE, P.C.
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
eagel@bespc.com
kuehn@bespc.com

*Attorneys for Plaintiff and the Class*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

THE COMPLAINT .......................................................................................................................4

ARGUMENT .................................................................................................................................5

    I.  DEFENDANTS' MOTION TO TRANSFER SHOULD BE DENIED
        BECAUSE OF CONSIDERATIONS OF JUDICIAL ECONOMY ...............................5

        A.  This Matter Involves the Same Issues as *Breitman*
           Concerning *CheckMate II*, which the SDNY has Devoted
           Substantial Resources to Adjudicating ......................................................................6

        B.  This Matter Can Be Most Efficiently Litigated in the SDNY .................................7

    II.  DEFENDANTS' ALTERNATIVE MOTION TO DISMISS SHOULD
        BE DENIED ..................................................................................................................9

        A.  Standard of Review ..................................................................................................9

        B.  The Complaint States a Claim for Breach of Contract ...........................................9

        C.  The Complaint States a Claim Under GBL § 349 ................................................11

        D.  The Complaint States a Claim Under the WCPA .................................................15

CONCLUSION............................................................................................................................16

## TABLE OF AUTHORITIES

Cases:

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................9, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................9, 15

*Breitman v. Xerox Educ. Servs.,
    LLC*, No. 12-6583, 2013 U.S. Dist. LEXIS 139613 (S.D.N.Y. Sept. 27, 2013) ............. *passim*

*Citicorp Leasing, Inc. v. United Am. Funding, Inc.*,
    No. 03-1586, 2004 U.S. Dist. LEXIS 739 (S.D.N.Y. Jan. 21, 2004) .......................................5

*Continental Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (U.S. 1960) ..........................................................................................................5

*Cruz v. Fxdirectdealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) .................................................................................................11

*Dolan v. Fairbanks Capital Corp.*,
    930 F. Supp. 2d 396 (E.D.N.Y. 2013) ..................................................................................11

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004) .................................................................................................10

*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*,
    719 P.2d 531 (Wash. 1986) ..................................................................................................15

*In re AMR Corp.*,
    -- F.3d --, 2013 U.S. App. LEXIS 18900, 2013 WL 4840474 (2d Cir. 2013) .....................10

*Lee v. Makhnevich*,
    No. 11-8665, 2013 U.S. Dist. LEXIS 43760 (S.D.N.Y. Mar. 27, 2013) ................................9

*National Super Spuds, Inc. v. New York Mercantile Exchange*,
    425 F. Supp. 665 (S.D.N.Y. 1977) ......................................................................................5, 8

*Nikac v. Pozzi*,
    172 F. Supp. 2d 414 (S.D.N.Y. 2001) ....................................................................................6

*Novartis Vaccines & Diagnostics, Inc. v. Bayer Healthcare LLC*,
    No. 08-068, 2009 U.S. Dist. LEXIS 89117 (E.D. Tex. Sept. 28, 2009) .................................5

*N.Y. Univ. v. Continental Ins. Co.,*
    87 N.Y.2d 308, 321 (1995) ..............................................................................................14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20 (1995) ......................................................................................................14

*World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co.,*
    345 F.3d 154 (2d Cir. 2003) ...........................................................................................10

Statutes:

28 U.S.C. § 1404(a) ...............................................................................................1, 2, 5

New York General Business Law § 349 ............................................................... *passim*

Washington Consumer Protection Act, RCW Ch. 19.86 .......................................4, 15

Rules:

Fed. R. Civ. P. 9(b) .................................................................................................15

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 9

Fed. R. Civ. P. 42 .....................................................................................................2, 7, 8

Rule 13 for the Divisions of Business among Judges, *Related Cases* .........................7, 8

**PRELIMINARY STATEMENT**

Plaintiff Sadaf Shirvani *a/k/a* Kristy Shirvani ("Ms. Shirvani" or "Plaintiff"), by her undersigned counsel, on behalf of herself and all others similarly situated, submits this memorandum of law in opposition to the motion [Dkts. Nos. 4-7] by defendants Xerox Education Services, LLC ("Xerox") and U.S. Bank, N.A. ("U.S. Bank") (collectively, "Defendants"), pursuant to 28 U.S.C. § 1404(a) to transfer this matter to the Northern District of New York ("NDNY"); or, alternatively, to dismiss the complaint [Dkt. No. 1] (the "Complaint") for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1]

This is an action on behalf of a class of student loan borrowers enrolled in Xerox's auto-debt payment program *CheckMate II*. The Complaint alleges that under *Checkmate II,* a borrower's monthly loan payment is to be deducted automatically from his or her bank account and applied to the outstanding balance of his or her loan each month, pursuant to the borrower's contract, regardless of any additional payments made by the borrower to reduce the balance of the loan. (Complaint ¶¶14-20) The Complaint alleges Defendants intentionally or recklessly have refused to credit properly these payments and instead applied the additional payments in breach of the *Checkmate II* agreement. (Complaint ¶¶25-37)

The Complaint alleges that Defendants have structured their business systems in order to improperly extract more interest from borrowers by failing to credit properly payments received in excess of the stated monthly amount due ("Prepayments"). (Complaint ¶¶2-4, 26-37, 49-55, 56-63) Defendants' scheme includes: (i) applying Prepayments not to reduce principal, but to keep borrowers in debt (Complaint ¶¶3(a), 26-28); and (ii) ignoring borrowers' express instructions as to how Prepayments should be applied to loans (Complaint ¶¶3(b), 29-36). The

---

[1] Also, submitted in opposition is the Declaration of Lawrence P. Eagel, Esq. ("Eagel Dec."), dated January 10, 2014.

1

end result is that Defendants keep borrowers trapped in student loan debt that borrowers are actively seeking to repay as fast as possible to lower their total cost of borrowing. (Complaint ¶¶4, 28)

Defendants' motion to transfer this matter to the NDNY should be denied. Judicial economy – a separate and usually dispositive factor in a court's 28 U.S.C. § 1404(a) transfer analysis – is best served by leaving this matter in the Southern District of New York ("SDNY"). This action challenges the same practice as the *CheckMate II* Class in the matter *Breitman v. Xerox Education Services, LLC, s/h/i Affiliated Computer Services, Inc., et al.*; Case No. 12-cv-6583 (PAC) ("*Breitman*").[2] The primary defendants in this matter – Xerox and U.S. Bank – are the same as in the *Breitman*.[3] *Breitman* has been pending in the SDNY since August 2012. In the nearly year-and-a-half *Breitman* has been before the SDNY, the Court has expended substantial effort resolving pre-trial matters and familiarizing itself with the issues in the case. It makes little sense for essentially the same parties to litigate essentially the same matter in two courts, or to require a new court to begin review of the issues presented in this matter when the SDNY has been considering the same issues since mid-2012.

In addition, there are obvious advantages to the SDNY retaining this matter because of its similarity to *Breitman*. Only by leaving this matter in the SDNY can the efficiencies under Fed. R. Civ. P. 42 be available to ultimately consolidate this action with *Breitman* or to "issue any other orders to avoid unnecessary cost or delay" by coordinating the two matters. If this matter is transferred to the NDNY, it will proceed on a separate track from *Breitman*, leading to duplicative discovery and redundant proceeding in the SDNY and NDNY. This result is plainly

---

[2] A copy of the amended complaint filed in *Breitman* ("*Breitman* Complaint") is attached to the Eagel Dec. as Exhibit A.
[3] *Breitman* also names NextStudent, Inc. ("NextStudent") as a defendant. However, NextStudent has not appeared in *Breitman*, and appears to have ceased to do business.

2

not in the interest of judicial economy. Further, if both cases remain in the SDNY, they can be mediated in the SDNY's mediation program on a consolidated basis (the parties in *Breitman* have already agreed to use the SDNY mediation program). If this matter is transferred, this opportunity to conserve resources will be lost. Judicial efficiency requires that this matter remain in the SDNY.

Defendants' alternative motion to dismiss must also be denied. In *Breitman*, the Court held that plaintiff stated a claim for breach of the same form *CheckMate II* terms and conditions by the identical misconduct alleged by Ms. Shirvani here. *See Breitman v. Xerox Educ. Servs., LLC*, No. 12-6583, 2013 U.S. Dist. LEXIS 139613, at *6-9 (S.D.N.Y. Sept. 27, 2013). Defendants do not, and cannot, distinguish Plaintiff's breach of contract claim from the breach of contract claim asserted in *Breitman*. Thus, just as in Breitman, Defendants have at best raised factual disputes that cannot be resolved on a motion to dismiss.

Similarly, in *Breitman*, the Court held that plaintiff stated a claim for violation of New York General Business Law ("GBL") § 349 for the identical misconduct alleged by Ms. Shirvani here. *See Breitman,* 2013 U.S. Dist. LEXIS 139613 at *11. Just as in *Breitman*, the Complaint contains detailed facts supporting Plaintiff's claim that Defendants' systems are designed to keep borrowers trapped in student loan debt when borrowers are actively seeking to repay that debt as quickly as possible to lower their total costs of borrowing. (Complaint ¶¶2-4, 26, 29-35) Defendants represent to borrowers that the offered repayment options, including *CheckMate II*, are designed to make repayment of their loans easier and less expensive, when in fact, unbeknownst to borrowers, Defendants employ a system that works in the exact opposite manner by applying Prepayments to thwart prepayment and to extract improperly additional interest from

student loan borrowers. (Complaint ¶¶11, 17, 29-35, 52, 56)  As the Court found in *Breitman*, this is objectively deceptive conduct that states a claim under GBL § 349.

Finally, the Complaint states a claim under the Washington Consumer Protection Act, RCW Ch. 19.86 ("WCPA").  Defendants' motion raises no new arguments in regard to the WCPA claim, but instead merely rehashes the arguments raised concerning Plaintiff's GBL § 349 claim.  Thus, for same reason as explained in the context of GBL § 349, these arguments must too be rejected.

## THE COMPLAINT

On October 16, 2013, Plaintiff filed the Complaint in this matter.  The Complaint asserts a class action on behalf of student loan borrowers who enrolled in *CheckMate II* – an auto-debit payment program offered by Xerox – for breach of contract, violations of the GBL § 349, and violations of the WCPA against Plaintiff's student loan servicer (Xerox) and owner (U.S. Bank). (Complaint ¶¶1-4)

Between 2006 and 2009, Plaintiff took out three student loans (the "Student Loans").  All of the Student Loans are graduate-plus loans under the Federal Family Education Loan Program, and were originated by U.S. Bank and serviced by Xerox.  In or around November 2010, to receive a .25% interest rate reduction, Plaintiff enrolled in a program offered by Xerox known as *CheckMate II*.  Under *CheckMate II* a borrower's monthly loan payment is supposed to be deducted for his/her bank account and applied to the loan each month as of the regular due date. (Complaint ¶¶ 8, 13-21)

From time to time, Plaintiff made Prepayments in order to reduce the principal balance of the Student Loans and, therefore, repay the Student Loans in less time and reduce her overall interest charge.  However, oftentimes Plaintiff's Prepayments were applied by Xerox to satisfy

4

future monthly payments, thereby preventing subsequent *CheckMate II* auto-debits without properly reducing the Student Loans' principal.[4]  Plaintiff repeatedly contacted Xerox in an effort to determine why her Prepayments were being applied to prevent future *CheckMate II* auto-debits and not to pay down principal, and to determine how to prevent this misapplication in the future.  Despite Plaintiff's efforts, Xerox was unable resolve her issues with *CheckMate II* because of problems with the Xerox servicing system. (Complaint ¶¶25-37)

## ARGUMENT

### I. DEFENDANTS' MOTION TO TRANSFER SHOULD BE DENIED BECAUSE OF CONSIDERATIONS OF JUDICIAL ECONOMY

Under 28 U.S.C. § 1404(a), judicial economy is a separate component of a court's analysis, and may be determinative even if the convenience of the parties and witnesses might call for a different result.  *See*, *e.g.*, *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, No. 03-1586, 2004 U.S. Dist. LEXIS 739, at *19 (S.D.N.Y. Jan. 21, 2004); *Novartis Vaccines & Diagnostics, Inc. v. Bayer Healthcare LLC*, No. 08-068, 2009 U.S. Dist. LEXIS 89117, at *16 (E.D. Tex. Sept. 28, 2009).  It is well settled that when more than one case involves the same issues, judicial economy requires that the cases remain in the same District Court if possible.  *See Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (U.S. 1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 (a) was designed to prevent."); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 425 F. Supp. 665, 667 (S.D.N.Y. 1977) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results.")

---

[4] Specifically, the Complaint alleges that Ms. Shirvani made Prepayments on the following dates: January 20, 2012; June 4, 2012; August 3, 2013; and July 26, 2013. (Complaint ¶26)

Further, it is considered to be a waste of judicial resources to transfer a case away from a District Court that has expended its efforts and acquired expertise on this issues presented by the case. *See Nikac v. Pozzi*, 172 F. Supp. 2d 414, 417 (S.D.N.Y. 2001) ("This court has already become familiar with the issues in this case. This court has addressed several pre-trial matters and dismissed the U.S. Marshals Service as a party in this action. There is no judicial efficiency in another court unfamiliar with this action to now begin anew…")

Defendants' motion ignores this matter's similarity to *Breitman* – pending in this district since August 2012 – and the resulting benefits to judicial economy of adjudicating this matter in the SDNY.

### A. This Matter Involves the Same Issues as *Breitman* Concerning *CheckMate II*, which the SDNY has Devoted Substantial Resources to Adjudicating

Ms. Shirvani: (i) challenges the same practice as the *CheckMate II* Class in *Breitman* – the skipping[5] of *CheckMate II* auto-debits after a Prepayment (*compare* Complaint *with Brietman* Complaint ¶¶1-4, 14-37, 45, 52-62); (ii) relies upon interpretation of the same form documents that the Court has already construed in *Breitman* (see Point II.B., *infra*); and (iii) has brought suit against the same defendants as *Breitman*. Thus, the two cases involve similar (if not identical) claims against the same two defendants (Xerox and U.S. Bank), and allege the same type of wrongdoing by these Defendants concerning the *CheckMate II* auto-debit payment program.

*Breitman* has been pending in this district since August 28, 2012. In the nearly year-and-a-half since *Breitman* was filed in this Court: (i) Defendants answered the original complaint, (ii) plaintiff filed an amended complaint, (iii) Defendants moved to dismiss the amended complaint, which was fully briefed by the parties, (iv) the Court ruled on Defendant's motion to dismiss the

---

[5] A *CheckMate II* payment is "skipped" when a borrower's regular monthly *CheckMate II* auto-debit is not "deducte[d] from [his/her] bank account and applied as of the assigned due date each month." (Complaint ¶26 n.5).

amended complaint, (v) the parties agreed to and the Court entered a case management plan, (vi) the parties have begun discovery, and (vii) a pre-motion conference was held concerning plaintiff's anticipated motion for class certification. (See docket in *Breitman* as of January 10, 2014, a copy of which is Eagel Dec. Ex. C)

It makes little sense for essentially the same parties to litigate essentially the same matter in two courts. It makes less sense for the NDNY to begin review of the issues presented in this matter when the SDNY has been considering the same issues since mid-2012.

### B.   This Matter Can Be Most Efficiently Litigated in the SDNY

It is not difficult to ascertain the advantages of the SDNY retaining the case because of its similarity to *Breitman*, and this Court's familiarity with the issues presented by both these matters. For example, under Fed. R. Civ. P. 42 ("Rule 42"), if this matter remains in the SDNY, the Court will be able to exercise its powers to ultimately consolidate this action with *Breitman* or to "issue any other orders to avoid unnecessary cost or delay" by coordinating the two matters. If Defendants' motion is granted this matter will proceed on a separate track from *Breitman*, leading to duplicative discovery and redundant proceedings in the SDNY and NDNY – this result is plainly not in the interest of judicial economy. Further, if both cases remain in the SDNY, they can be mediated in the SDNY's mediation program on a consolidated basis (the parties in *Breitman* have already agreed to use the SDNY mediation program). If this matter is transferred this opportunity to conserve resources will be lost.

To attempt to circumvent the advantages of keeping this matter in the SDNY, Defendants overstate the impact of Judge Crotty declining – at least initially – to accept this matter. First, as mentioned above, this case remains subject to possible consolidation with *Breitman* under Rule 42. Rule 13 for the Divisions of Business among Judges, *Related Cases* ("Rule 13"), provides

7

"[n]othing in this Rule is intended to preclude parties from moving for consolidated proceedings under Fed. R. Civ. P. 42." Yet Defendants, through their motion, seek to parlay a judge's election regarding relatedness to prevent consolidation under Rule 42. Judge Crotty's initial preference to have this case assigned to another judge is not a final determination that there are not substantial benefits to consolidating this matter, in whole or in some part, with *Breitman*, to "avoid unnecessary cost or delay." As set forth above, these benefits can only be realized if this matter remains in the SDNY. Second, Judge Crotty's election to return this matter for random assignment was not accompanied by an explanation. Thus, any conclusion drawn from Judge Crotty's election is merely surmise.[6]

Finally, the similarities between this matter and *Breitman* create very different considerations for the Court than in *Reynolds*.[7] In *Reynolds*, different underlying wrongdoing was alleged than in *Breitman* and there was a defendant (Wells Fargo) not common to *Breitman*. Thus, if, as defendants claim in *Reynolds*, the witnesses and documents are located in Utica, NY, there was arguably an efficiency gained by moving that matter there. Here, the opposite is true. All Defendants in this matter are common to *Breitman*, and the majority, if not all, of the witnesses, documents, and evidence relevant to the *Breitman CheckMate II* Class are relevant to this matter. Thus, the witnesses and evidence for litigation of this matter must already come (and have been coming) to the SDNY. Transferring this matter will only cause redundancy in the NDNY. This was not the case in *Reynolds*. *See National Super Spuds, Inc.*, 425 F. Supp. at 667-68 ("There is a substantial likelihood that these other cases will involve many of the same issues, witnesses and documents as the cases which the movants seek to have transferred. A transfer under such circumstances is unwarranted for it would defeat the interests of justice by the

---

[6] The election concerning relatedness was made prior to the recent revisions to Rule 13.
[7] A copy of the amended complaint in Reynolds is attached to the Eagel Dec. as Exhibit D.

8

resulting duplication of effort, waste of judicial resources and infliction of needless inconvenience, burden and expense upon the parties and witnesses."

Defendants' motion to transfer to the NDNY should be denied.

## II. DEFENDANTS' ALTERNATIVE MOTION TO DISMISS SHOULD BE DENIED

### A. Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint" and construe the complaint in the light most favorable to plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (internal quotation marks omitted). "The Court only 'assess[es] the legal feasibility of the complaint' it does not 'assay the weight of the evidence which might be offered in support thereof.'" *Lee v. Makhnevich*, No. 11-8665, 2013 U.S. Dist. LEXIS 43760, at *15 (S.D.N.Y. Mar. 27, 2013) (internal citation omitted). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. The Complaint States a Claim for Breach of Contract

In *Breitman*, the Court held that plaintiff stated a claim for breach of the same form *CheckMate II* terms and conditions by the identical misconduct alleged by Ms. Shirvani here. As stated in *Breitman v. Xerox Educ. Servs., LLC*, No. 12-6583, 2013 U.S. Dist. LEXIS 139613, at *6-9 (S.D.N.Y. Sept. 27, 2013):

> The terms and conditions for the Checkmate II program were set forth in Breitman's Checkmate II Agreement, dated March 23, 2006, which stated that 'each automatic withdrawal will occur on the account's (student loan) regular scheduled due date.' (Ans. Ex. 2 at 1.) The Checkmate II Agreement makes no mention whatsoever of how prepayments will be treated.
>
> Defendants contend that in the absence of such a term, there is no reason for prepayments made by borrowers enrolled in Checkmate II to be applied to the

9

> Loans' principal balance rather than to delay the date of future payments. Defendants' is not the only reasonable interpretation of the Checkmate II Agreement. The absence of any specific prepayment clause could just as easily be read to mean that prepayment will have no affect on a borrower's automated payments under Checkmate II. That the Agreement refers to a borrower's *'regular* scheduled due date,' rather than their *'next* scheduled due date,' suggests that Defendants will debit a borrower's account by the agreed-upon amount at regular intervals, i.e. every month, regardless of whether prepayments have been made. At the very least, it evidences an ambiguity in the contract, which 'exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) (quoting World Trade Ctr. Props. LLC v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003)); see also In re AMR Corp., -- F.3d --, 2013 U.S. App. LEXIS 18900, 2013 WL 4840474, *5 (2d Cir. 2013) ("Whether a contract is ambiguous is a question of law for the courts to resolve.").
>
> ∗∗∗
>
> As a general matter, '[u]nless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.' Eternity Global Master Fund, 375 F.3d at 178. Since Defendants have failed to advance any such reason, their motion to dismiss Breitman's first cause of action is denied.

Defendants make no attempt to distinguish Ms. Shirvani's breach of contract claim from the breach of contract claim asserted in *Breitman* on behalf of the *CheckMate II* Class because they cannot. The document the Court in *Breitman* refers to as setting forth the relevant terms and conditions (Ms. Breitman's *Checkmate II* Agreement, dated March 23, 2006, a copy of which Defendants attached as Exhibit 2 to their original answer in *Breitman* and is Eagel Dec. Exhibit B) states the same form terms and conditions alleged in paragraphs 15-17 of the Complaint, which Defendants concede (Defs. Memo of law at p. 8) are part of Ms. Shirvani's *CheckMate II* contract.

Defendants' argument (Defs. Memo of law at pp. 8-9) that the terms and conditions quoted in paragraph 19 of the Complaint represent new terms that are not a part of Plaintiff's

10

*Checkmate II* terms and conditions, at most, raises a disputed factual issue that cannot be resolved on a motion to dismiss. In all events, this argument fails. As explained above, even without considering the language quoted in paragraph 19, the Complaint states a claim for breach of contract. In addition, Defendants ignore that the Complaint alleges that that the language quoted in paragraph 19 is not a new term, but alleges that this language published by Xerox on its website, at least as early as April 2012, is consistent with the terms and conditions alleged in paragraphs 15-17 of the Complaint. Except for Defendants' own self-serving interpretation of the terms and conditions of *Checkmate II*, they have no support for the argument that the language quoted in paragraph 19 is a completely new term to *CheckMate II*'s terms and conditions.

For the foregoing reasons, Defendants' motion to dismiss Count I of the Complaint should be denied.

    **C.**    **The Complaint States a Claim Under GBL § 349**

As was the case regarding the breach of contract claim in *Breitman*, the Court held that plaintiff stated a claim for violation of GBL § 349 for the identical misconduct alleged by Ms. Shirvani here.[8] As stated in *Breitman,* 2013 U.S. Dist. LEXIS 139613, at *11:

> A financial institution's failure to properly implement an agreement with a customer by improperly crediting a customer's account for their payments, as alleged herein, is objectively deceptive. See Dolan v. Fairbanks Capital Corp., 03 Civ. 3285, 2013 U.S. Dist. LEXIS 34830, *52-56 (Mar. 13, 2013). Accordingly, Defendants' motion to dismiss Count II in its entirety is denied.

Here, just as in *Breitman*, the Complaint sets forth in great detail that Defendants have been endeavoring to keep borrowers trapped in student loan debt that borrowers are actively

---

[8] The Second Circuit in *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 123-24 (2d Cir. 2013) held an out of state plaintiff has standing to assert a claim under the GBL when the allegedly deceptive transaction occurs in New York, regardless of the plaintiff's location. Here, the Brodel Declaration [Dkt. No. 5], filed by Defendants in support of the motion, makes clear the alleged deception occurred in the State of New York.

seeking to repay as quickly as possible to lower their total costs of borrowing. (Complaint ¶¶2-4, 26-37)  Defendants represented to borrowers that the offered repayment options, including *CheckMate II*, were designed to make repayment of their loans easier and less expensive, when in fact, unbeknownst to borrowers, Defendants employed a system that worked in the exact opposite manner by applying Prepayments to thwart prepayment and wrongfully extract additional interest from student loan borrowers. (Complaint ¶¶11, 17, 33, 52, 60)

Specifically, the Complaint alleges that Xerox, as agent for U.S. Bank, represented to borrowers:

- "[t]he Level Repayment Plan is designed to allow the borrower to make payments of equal amounts throughout the payment period. <u>This plan provides the least amount of interest accrual</u> over the life of the loan" (emphasis added) (Complaint ¶11);

- *Checkmate II* "is the most convenient way [for borrowers] to make [their] student loan account payment.  You will save time and money, as well as eliminate the hassle of writing checks" (Complaint ¶17);

- "each automatic withdrawal **will** occur **on the account's (student loan) regular scheduled due date**."  (emphasis added) (Complaint ¶15);

- "Your regular monthly payment **will** be deducted from your bank account and applied as of **the assigned due date each month**" (emphasis added) (Complaint ¶16); and

- "You authorize your financial institution to deduct the ACS loan payment(s) for the selected loan(s) automatically from your designated bank account **each month**.  This recurring debit **will** be made on your **pre-established due date**.  <u>Please note that prepayments, defined as additional payments received on your loan(s) greater than the regular installment or the amount due, will not satisfy future installments or prevent the next month's debit.</u>" (emphasis added) (Complaint ¶19)[9]

The Complaint alleges that contrary to the above-listed representations – which induced borrowers to believe that their student loans were being serviced by legitimate systems that

---

[9] Again, Defendants' argument (Defs. Memo of law at p. 9) regarding whether this provision is or is not applicable to this matter does nothing more than raise a factual dispute.  In all events, the Complaint alleges more than enough facts to sustain a claim under N.Y. GBL § 349 with or without invoking this provision.

12

properly credit payments, did not overcharge interest, but fostered repayment – Defendants' servicing system works in the opposite manner, by applying Prepayments to thwart prepayment and wrongfully extract additional interest from student loan borrowers. (Complaint ¶¶2-4, 26-37, 52, 50)  The Complaint alleges detailed facts to demonstrate that the above-stated allegations evince a scheme to service improperly thousands of student loans for Defendants' profit and represents more than "garden variety" breach of contract claim.  (Complaint ¶¶26-37)

For example, Ms. Shirvani was told by a Xerox representative, just like Ms. Breitman (see *Breitman* Complaint ¶35), that the Xerox system was not capable of ensuring that a Prepayment could be applied without causing *CheckMate II* auto-debits to be skipped**.** Specifically, Ms. Shirvani received the following email from Xerox regarding the misapplication of Prepayments:

> Unfortunately, **when a customer is making additional payments along with the Checkmate II drafts we cannot guarantee that the draft will be implemented**, as it is a very time sensitive process. (emphasis added)

(Complaint ¶33)

This email corroborates that the Xerox system acted to skip *CheckMate II* auto-debits when Prepayments are received.  In addition, the above-quoted email makes clear that the *CheckMate II* terms and conditions contain misrepresentations, that Xerox is aware of the problems with the *CheckMate II* system regarding the application of Prepayments, that borrowers' instructions as to how Prepayments should be applied to their loans are systematically ignored, and that no procedure exists for a borrower to make a Prepayment and not have *CheckMate II* auto-debits skipped.  Further, that Xerox "cannot guarantee" that Prepayments will not cause *CheckMate II* auto-debits to be skipped after Prepayments no matter

13

what a borrower does is not disclosed in the *CheckMate II* enrollment forms. Thus, the Complaint alleges in great detail a claim under GBL § 349.

Desperate to avoid the *Breitman* holding, Defendants misstate it (Defs. Memo of law at p. 10). The Court in *Breitman* at n.4, stated:

> Nevertheless, Breitman's argument that Defendants' practices were deceptive as they relate to her November 14, 2011, email is "essentially a 'private' contract dispute . . . which is unique to these parties, not conduct which affects the consuming public large." N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 321 (1995). Accordingly, the Court focuses its analysis on only those aspects of Breitman's allegations that are consumer-oriented, rather than those involving only Breitman. See Oswego, 85 N.Y.2d at 25.

Thus, in n.4 the Court in *Breitman* was referring to a single email dated November 14, 2011, in which Ms. Breitman instructed Xerox (for a second time) that a Prepayment should never cause her *CheckMate II* auto-debit to be skipped, but despite this instruction subsequent Prepayments made by Ms. Breitman still caused payment misapplications. The Court was not referring to all of Ms. Breitman's email communications with Xerox as is disingenuously argued by Defendants. The second sentence of n.4, omitted by Defendants, makes clear that the email Ms. Breitman received from Xerox providing that the Xerox system is incapable of applying Prepayments without skipping *CheckMate II* auto-debits (see *Breitman* Complaint ¶35) was considered by the Court in sustaining the claim for violation of N.Y. GBL § 349. Thus, the email Ms. Shirvani received concerning the inability of the Xerox system to properly apply Prepayments (quoted above) is relevant to her GBL § 349 claim.

Defendants' arguments (Defs. Memo of Law at p. 9 and p. 11 n. 4) concerning the relevant pleading standard is also meritless. The cases cited by Defendants on page 9 of their Memo of Law stand for the unremarkable proposition that conclusory allegation made upon information and belief are insufficient to state a claim under GBL § 349. These cases do not

14

provide, as Defendants claim, that a GBL § 349 claim contained in a complaint alleged upon information and belief is *per se* dismissible.  As explained above, the Complaint alleges a claim under GBL § 349 with great detail.[10]  Further, Defendants point out that a GBL claim is subject to the pleading standards explained in *Twombly* and *Iqbal* (Defs. Memo of law at p. 11 n.4).  This argument is of little relevance.  In *Breitman*, the Court sustained a materially identical GBL claim applying the *Twombly/Iqbal* pleading requirements.  *See Breitman,* 2013 U.S. Dist. LEXIS 139613 at *4-5, 9-11.  In addition, Defendants do not even argue that a GBL claim is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

The Complaint states a claim under GBL § 349.

### D. The Complaint States a Claim Under the WCPA

To state a claim under WCPA, a plaintiff must allege: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.  *See*, *e.g.*, *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

As explained above in the context of Plaintiff's GBL § 349 claim (see Point II.C., *supra*), the Complaint alleges all of these elements in great detail.[11]  Defendants' motion raises no new arguments in regard to the WCPA claim, but instead merely rehashes the arguments raised concerning Plaintiff's GBL § 349.  Thus, for the reasons stated above, these arguments must too be rejected.

The Complaint states a claim under the WCPA.

---

[10] Even if Defendants are correct on this point, which they are not, Plaintiff should be granted leave to replead.
[11] Plaintiff is a resident of Washington State. (Complaint ¶8)

## **CONCLUSION**

Defendants' motion to transfer or, alternatively, dismiss the Complaint must be denied.

Dated: New York, New York
January 10, 2014

                          BRAGAR EAGEL & SQUIRE, P.C.

                          By: s/ Lawrence P. Eagel
                              Lawrence P. Eagel (LE4505)
                              Justin A. Kuehn (JK5853)
                          885 Third Avenue, Suite 3040
                          New York, New York 10022
                          Tel: (212) 308-5858
                          Fax: (212) 486-0462
                          eagel@bespc.com
                          kuehn@bespc.com

                          *Attorneys for Plaintiff and the Class*